' JANVIER, Judge.
This suit results from an automobile collision which occurred shortly after noon on April 29, 1951, on Ú. S. Highway No. 90, about three miles west of the Mississippi River bridge just above the City of New Orleans.
The .plaintiff, Mrs. Mabel Lacour, wife of Lawrence Aiavolasiti, was seated on the right side of the front seat of a panel truck, which was being operated by her husband in a westerly direction. The other vehicle involved was an old sedan occupied by three Negroes who were going in an easterly direction. The two cars met in collision and Mrs. Aiavolasiti sustained serious and painful injuries. The truck in which she was riding belonged to Joseph D’Arcangelo who had loaned it to Aiavo-lasiti for the purpose for which it was being used; to drive certain members of his family and other friends to a picnic and horse show which was being conducted at Paradis, a settlement situated on Highway No. 90, some twenty or thirty miles west of New Orleans.
D’Arcangelo had secured from The Ohio Casualty Insurance Company, the defendant, a policy of liability insurance which contained a provision which protected not only D’Arcangelo but also anyone operating the particular car covered by the policy provided the operation was with the permission of the owner.
Plaintiff brought this suit on the allegation that there was such a policy, that the accident resulted from negligence of her husband and that, because of the provisions of Act 55 of 1930, as amended, LSA-R.S. 22:655,, her cause of action might be asserted directly against the said insurer. She prayed for judgment in the sum of $14,000. She alleged that, as her husband was driving the truck “at a speed .of approximately 35 to 40 miles per hour,” he
“suddenly and without warning whatsoever to petitioner, or anyone else, looked .into the rear part of said truck, took his eyes off- the road, failed1 and neglected to -watch where he was driving, and without slowing down, pulled over the, center line of said- highway, to his left, directly into the path of -an oncoming vehicle being driven- in the opposite direction.”
The defendant admitted the issuance of the policy and that it was in full force and effect at the time of the accident and that if the accident was' caused by negligence of plaintiff’s husband, it, the defendant, - was liable to plaintiff for such, damage as she sustained, but it denied that plaintiff’s husband had been in any way at fault, aver-, ring that, on the contrary, the collision had been caused by the negligence of the operator of the other vehicle, Henry B. Johnson, '
“who was driving his said automobile in a drunken condition, and crossed to the wrong side of the road, directly in the path of the truck being driven by Lawrence Aiavolasiti, who then unavoidably collided with the said Johnson automobile.”
The issue was thus narrowed to the one-question of whether the car in which plaintiff was driving crossed the highway to the wrong side and into the other car and whether the other car was suddenly swerved across the highway directly into-the path of the truck.
In the district court there was judgment for the defendant and plaintiff has appealed.
The record leaves not the slightest doubt as to how the accident occurred. Plaintiff’s husband operated the truck properly and not only remained on the correct side of the road but, when he saw that the other car was crossing to the wrong side, he swerved the truck even further to its right, with the result that when the two cars. *433 came to rest after the collision the other car had completely crossed the road to the shoulder on the wrong side and the truck itself had stopped partially on the shoulder on its correct side of the road.
As a matter of fact, Aiavolasiti, plaintiff’s husband, in spite of his denial that he had made no such statements, is shown beyond any possible question to have made at least two statements to the effect that the other car swerved across the road in front of the truck and that he 'did all that 'he could to avoid the collision.
The truth of the matter is that Aiavo-lasiti did not at first realize that, as a result of Act 55 of 1930, as amended, the insurance policy which the owner of the car had obtained from defendant made it possible for Mrs. Aiavolasiti to proceed against the insurer of the .owner of the truck. Since at first he did not realize this, he told the truth about the occurrence until he discovered the legal effect of the policy. From then on he did all that hé could to prove himself at fault and to assist his wife in her attempt to collect from insurer.
The district judge handed down reasons for judgment which, in. our opinion, so completely analyze the testimony and so correctly hold this insurer to be without liability that we shall do no more than set forth these reasons in full:
“This is a suit for damages for personal injuries resulting from a collision which occurred on U. S. Highway 90 in the Parish of Jefferson on April 29, 1951, at about 12:15 P.M., between a panel truck, in which the plaintiff was riding as a passenger, and an automobile driven by a negro named Johnson. At the point of the collision Highway 90 is a straight, paved highway divided by a marked line down the center to separate traffic travelling in opposite directions.
“Plaintiff’s husband was driving the aforesaid truck with the consent of the truck owner who carried a liability policy with the defendant. The question involved is solely one of veracity and fact. It is conceded by both counsel that the plaintiff is entitled to recover within' the limits of the policy if her contention as to how the accident occurred is correct, and that, on the other hand, plaintiff’s suit should be dismissed and no recovery allowed if the defendant’s contention of how the accident occurred is correct.
“The plaintiff contends that she was riding on the right hand side of the front seat of the truck which her husband was driving and that their son, George Aiavolasiti, was seated between them; that four children were in the back of the truck, making sandwiches while they were on .their way from New Orleans to a picnic and horse show, at Paradis. Testimony was offered by the plaintiff that, while the truck was travelling at a rate of approximately forty miles per hour, the driver of. the truck turned his head to. speak to the children in the back of the truck about a sandwich; that while his head was turned -the. truck went to the left or woods.side of the road into that lane reserved for traffic travelling in the opposite direction, that is towards New, Orleans; that the plaintiff screamed to her husband upon noticing that this had happened and he tried to get back to his proper side of the road but that the approaching Johnson automobile, travelling in the opposite direction towards New Orleans, was then too close to avoid a collision; that the Johnson car was turned to its left and the truck was turned to its right in an attempt to avoid the accident; that the collision occurred while the truck was in its wrong lane, that is on. the woods side of the center line.
' “The defendant contends that the truck was proceeding in its correct right hand lane; that the driver of the approaching car was intoxicated at the time of the accident; that the said Johnson car was zigzagging from one side of the road to the other; that the driver of the truck attempted to avoid the accident but was unable to do so because of the fact that the Johnson car zigzagged over the road, almost *434 running off its 'right hand side thereof and then back again across the center line into the lane of traffic reserved for vehicles travelling in the direction in which the truck was proceeding; that the truck driver put on his brakes and turned toward his right but that, despite said actions, the truck ran into the side of the automobile; that the collision occurred entirely in the truck’s right hand lane, the proper lane for its travel.
“In proof of the facts of the accident the plaintiff and the defendant each offered four witnesses, namely: For the plaintiff: (1) Lawrence Aia-volasiti, plaintiff’s husband; (2) Plaintiff herself; (3) George Aiavolasiti, the son of plaintiff and her husband, who was also riding in the front seat of the truck; and (4) Anthony Cuc-cia, in rebuttal, who was in the same party with the plaintiff and her family, driving a car a short distance ahead of the truck. For the defendant: (1) W. H. Sehrt, an insurance man, who testified to a statement concerning the facts of the accident allegedly made to the said Sehrt by the plaintiff’s husband the day after the accident, which statement was in conformity with the defendant’s theory of how the accident occurred; (2) L. A. Carrington, Jr., a State Trooper, who investigated the accident shortly after its occurrence, (3) Paul R. Luzina, Jr., a garage man who towed the truck from the scene of the accident to his garage after the accident, (4) Wayne Bigner, an insurance adjuster, who investigated on behalf of the defendant.
“Only two of the aforesaid witnesses actually saw the accident happen : The plaintiff and her husband, the driver of the truck. Of these the husband and driver is the more important as he testified more in detail, the plaintiff having been rendered unconscious by the collision. Of course both of these eyewitnesses have a very real interest in the outcome of this suit.
“The only totally disinterested witness was the State Trooper, Carring-ton, who, it should be noted, not only testified from his own recollection but refreshed his memory from the usual police accident report drawn up by himself. The Court feels that, except for the usual tendency to draw conclusions from physical evidence, a tendency which the Court attempted to prevent and does disregard in its finding of facts, Trooper Carrington’s testimony is true and correct as to the physical facts he found upon arriving at the scene of the accident and what occurred after his arrival there. The Court particularly notes three points in connection with the testimony of Trooper Carrington, all resulting from his usual, routine police investigation made after his arrival on the scene:
“(1) Carrington testified that the skid marks made by the truck tire or tires on the highway at the scene of the accident were in the truck’s proper lane of traffic, that is, the lane on the river side of the road, and did not cross the center line of the highway. This is a clear indication that, at the time of the collision and immediately prior thereto, the truck was and remained in its proper lane of traffic and did not cross into the opposite lane as testified to by plaintiff and her husband.
“(2) Trooper Carrington further testified that the mud and parts of both vehicles left in the roadway and shaken from the under parts of said vehicles at the moment of impact were all on the river side of the highway in approximately the center of the truck’s proper lane of travel. This clearly contradicts plaintiff’s theory of how the accident happened, particularly that testimony on behalf of plaintiff to the effect that, at the time of the collision, t'he truck was on the woods side of the center line and that, after the collision, the truck (came to rest across the center black line with about three-quarters of the truck on the 'woods side of said line, and the Johnson automqbile came *435 to rest with its front wheels a little on the river side of the black line, with both vehicles facing in the general direction of the river. If this testimony on behalf of the plaintiff were correct, the mud and debris shaken loose and deposited from the bottoms of the car and truck at the time of the impact certainly could not have been in the river side lane, the proper lane for the-truck’s travel.
“(3) Carrington also testified that he spoke to and with the plaintiff’s husband at the scene of the accident shortly after it had occurred and that Mr. Aiavolasiti .told Carrington that the accident had been caused by the Johnson automobile zigzagging along the road and crossing into the truck’s lane of travel immediately before the accident, which resulted in the collision despite the fact that he, Aiavolasiti, who was in his proper right, hand (or river) lane, tried to get out of the way. This statement, of course, agrees with the defendant’s theory of how the accident occurred. It is essentially the same as the one the defendant’s witness Sehrt testifies Mr. Aiavolasiti made to him (Sehrt) the day after the accident. Aiavolasiti, in his testimony, denies having talked with Trooper Carrington at all and' denies having made any statement to Sehrt about the accident. For the purpose of being certain that there would be no mistake about Carrington’s identification of Aiavolasiti the Court took the precaution of bringing Aiavolasiti, who had been separated as a witness, into the room and having him viewed by Carrington while Carrington was on the stand. After seeing Aiavolasiti, Carrington was definite and positive that he had talked with the former at ■ the scene and on the date of the accident and that Aiavolasiti’s statements at that time were as above set forth.
“For the reasons above recited the Court is of the opinion that the accident occurred, as contended by the defendant, without negligence on the part of the driver of the truck in which the plaintiff was travelling as a passenger. Accordingly judgment is rendered. in favor of the defendant.”
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.
REGAN, J., absent, takes no part.